Our final case this morning is Donez v. Leprino Foods, case number 21-12-12. Ms. Burma, you may proceed. And is it pronounced Donez or Donez? Donez. Donez, thank you. May it please the court, my name is Amy Burma and I am the attorney for Plaintiff Appellant Nicholas Donez. Mr. Donez was a Hispanic employee. He worked on the plant floor of Leprino Foods in its Fort Morgan plant for 18 years. Despite being an exceptional employee, he was wrongfully terminated by Leprino after he was viciously assaulted by a white employee. With the time I have, I just want to briefly address the first issue and point out that, contrary to Leprino's arguments, there is an important public policy reason for courts to recognize public policy exception for self-defense with respect to wrongful termination cases. An employee has a right to feel safe at work. Based on Leprino's arguments, an employee could never protect him or herself in the workplace without facing termination. Can I stop you? Please. You go ahead, Judge Phillips. I was just going to ask you on the self-defense point. And I read his deposition pages where he now says that Levar, I believe it is, raised his arms and that suggested the self-defense as though he were going to be stricken. And so that's why he pushed. But did he ever tell any HR person that? What I understand is he told the HR person, he pushed me, so I pushed him back. So after the incident, immediately after he went to the hospital and HR representatives from Leprino went to go see him there to take him some paperwork and forms, they briefly asked him some questions, which he barely remembers. And then they asked his wife, Mrs. Donas, who is also an employee at Leprino, to get a statement from him. She wrote out the statement based on the best of her ability and gave it back. In the statement, it did not include any reference to whether or not he pushed back at all. It just didn't say anything. Leprino never followed up with Mr. Donas until after it got a copy of the police report. And then it called to merely confirm with him that he, in fact, had told the police that he pushed back. They never asked if he was acting in self-defense or why or did any other further investigation. But he made a statement. He said he pushed me and I pushed him back. And that's all I remember. That was a statement. I know it's black. Correct. Nothing in there about I thought I was going to be hit, so I pushed him back or anything like that. So doesn't that have some sort of an effect that the employer was never told that? Judge, that was a statement that he made to the police following the incident. And, you know, again, he was not charged. He was not asked anything about why he pushed back. I mean, he assumed that people would understand that he was pushing back because he was acting in self-defense. And I think that at minimum, that creates a question of fact for the jury to decide whether or not he was acting in self-defense, particularly in light of the fact that Mr. LeVar was arrested and convicted and charged with felony assault or Mr. Donas was not. So I'm going to move on to the second point, just because before you do, the question I was going to ask was a broader viewpoint question. You talked about this being policy and important decisions as well. Why don't we certify this to the Utah Supreme Court? Has anybody asked about that or thought about it? Or what would your position be if we certified this? This question of whether self-defense is a is a recognized defense to a termination of an at-will employee seems to me just filled with public policy questions. And the Supreme Court, the courts already have said for Colorado that they do have defenses to at-will terminations. There are limitations and there are expansions of it. And why don't we say we would like you to address this one? Judge, that would be acceptable to us. I do think, however, that it is in this court's ability to based on the other exceptions that have been recognized to public policy in Colorado, to view this as a natural flow of the case law and how the Colorado Supreme Court would decide on this issue. But if it were to be decided by the Supreme by the Colorado courts, I'd be confident that they would find a right to self-defense in the workplace, particularly in light of the shootings and workplace violence incidents that we hear about regularly on the news. Of course, if we did that, we'd probably first have to address the other non-state issues, the ones of the Title seven issues, which we could address, I suppose, on our own. Well, I'd like when we get to the police, I'd like to get the police position on certification as well. Thank you. With respect to the second issue, the district court aired when it excluded other acts, evidence relating to comparators and me to other acts, whether it's comparators and discrimination cases or in criminal cases or products, liability, any case are subject to the same rules of miscibility. That is, you know, 401 and 403. Basically, all relevant evidence is admissible unless it's probative values outweighed by the danger of unfair prejudice. Sprint V Mendelsohn, the Supreme Court stated that the district courts must weigh all factors and the claims before excluding comparators or me to evidence. The court stated that in that case, had the district court applied a per se rule excluding the evidence, the Court of Appeals would have been correct to conclude that it abused its discretion. In this case, the court failed to consider all the factors and claims. For example, with respect to the incidents involving Mr. Getman and Mr. LeVar, the court concluded that those were too far in the past. This is despite the fact that Mr. LeVar was the exact same individual that assaulted Mr. Donas involving the exact same conduct. Obviously, because it was the same individual in the same conduct. And in light of Loprino's position that it terminated Mr. Donas because he was an aggressor in a fight and violated their zero tolerance policy makes Mr. LeVar in particular extremely relevant to the claims in the case. In this case. Similarly, the court excluded evidence of Crystal Campus and Edgar Nunez because they were too far in the future. They were Hispanic employees who felt that they were also discriminated against. Crystal Campus was, I believe, 18 months apart from Mr. Donas. Now, again, the court did not consider the other various factors. With respect to Mr. Morrison, the court excluded him because he was not relevant in all respects. And this is despite the fact that in its decision denying Loprino's first motion for summary judgment, the district court found that whether Mr. Morrison was his actions were of compare comparable seriousness was an issue for the jury to decide. Wasn't wasn't he later let go Mr. Morrison for another incident? He was later terminated after he threatened to bring in a gun and specifically shoot Mrs. Donas. But again, had Loprino kept by its policy, its alleged zero tolerance policy, then in theory, Mr. Morrison should have been terminated. And during this previous instance, when two employees made complaints about him, about a month after Mr. Donas was terminated. And then Mrs. Donas would not have had to be subjected to the fact that she was threatened with an assault at the workplace. Having someone potentially bring in a gun and shoot her. You know, the court also failed to consider other basis for admissibility that to discredit the employer's assertion of legitimate motives. Again, Loprino claims that Mr. Donas was terminated in violation of its zero tolerance workplace policy and showing that it did not, in fact, have a zero tolerance policy, that it's it reflects its discriminatory motives and discredits their alleged legitimate reason. I'm on that point. Could you state your your argument on pretext? That is, Loprino argues that you you couldn't show that their reason for firing Mr. Donas was pretextual. What what what is your argument on that? So Loprino states that it terminated Mr. Donas because he was an aggressor in this in the fight and that he escalated the incident. However, again, as the court pointed out in its decision denying Loprino's first motion for summary judgment. Mr. Donas was identified as a victim in the police report. Loprino requested the police report and relied on it in its decision to terminate Mr. Donas. It stated that stated Mr. Donas's injuries, stated that Mr. LeVar was arrested. There was a February 22nd email between two HR employees at Loprino stating that Loprino needed the police report or probably wouldn't be able to terminate Mr. Donas. Again, the court in its first decision denying Loprino's first motion for summary judgment so that that could lead to the inference that Loprino did not believe Mr. Donas was the aggressor. There's other factors such as the fact whether workplace violence, whether there's a violation of workplace violence for Loprino was a completely subjective standard. There was Mr. Donas was replaced by a white employee. The fact that they asked Mrs. Donas to get a statement, which is contrary to their policy of interviewing witnesses themselves, shows that there was issues regarding their investigation. I think that at minimum, and Loprino's own OSHA report identified Mr. Donas as a victim. Based on these facts, this definitely leads to a minimum genuine issue of material fact regarding whether or not Loprino's proffered reason for terminating Mr. Donas was pretextual. I think that there's sufficient there for it to be determined by a trier of fact. So, and I think this kind of goes to the third argument, which is that the trial court erred when it granted Loprino's renewed motion for summary judgment. Loprino incorrectly argues that Mr. Donas cannot establish a prima facie case without evidence of comparators. And this is just contrary to well-established case law, that discriminatory intent can be inferred by a showing of pretext. Rejection of the employer's proffered reason will permit the finder of fact to find discriminatory intent. And I think that here, based on the evidence presented, that even assuming, which we do not, which we dispute, that evidence of the comparables was excluded, there's still sufficient evidence for the issue of racial discrimination to go to a jury. And unless there's any other questions, I will reserve my remaining time for rebuttal. Thank you, Mr. Britton. Thank you. Good morning. William Britton on behalf of the Appalee Loprino Foods Company. Let me start off by giving maybe a more fuller explanation for exactly what Loprino Foods did here in this situation, because I think that presentation was a little bit misguided. This was a fight between a Hispanic gentleman, Mr. Donas, and Mr. LaVar on a factory floor in Fort Morgan at Loprino's Fort Morgan plant. There were no witnesses to this fight. It's undisputed today that Mr. Donas pushed Mr. LaVar back after Mr. LaVar initially pushed Mr. Donas. However, that information was never offered voluntarily by Mr. Donas. It was only offered after Loprino Foods HR persons spoke with the Fort Morgan Police Department who was investigating the situation. And Detective Bosberg from the Fort Morgan Police Department told Risa Esterly, our HR manager, that Mr. Donas admitted pushing Mr. LaVar back. Now, Mr. Donas told Ms. Esterly at the hospital and in his written statement, which he provided, that Mr. LaVar pushed him and he didn't remember anything after that. So Loprino Foods did ask for the police report. When it received the police report, it contacted Mr. Donas. Ms. Esterly contacted Mr. Donas in a phone call and said, essentially, I've got the police report. The police report says that you admit pushing Mr. LaVar back. Mr. Donas finally admitted to Loprino Foods that he did that. That is a violation of Loprino Foods workplace violence policy. Would that be true even if it was self-defense? The testimony from Loprino Foods 30B6 witness was if there was a claim of self-defense, which there was not here and certainly was never made prior to the termination decision. But if there was a claim of self-defense, it would be investigated. That claim was never made. Mr. Donas says he made it after he was advised that his employment was being terminated. And so Loprino Foods 30B6 witness said we would investigate that. What the decision would be, we don't know. But one thing that's for sure is that Loprino Foods HR department went the extra mile here. They did a thorough investigation. Now, in the underlying pleadings. Well, OK, I just I just want to make sure I'm clear on your answer. And and I understand. The the chronology that you just you just gave us. But if. If an employee acts out of self-defense, but does so in a way where maybe he's pushing someone away or taking some other physical action, that wouldn't necessarily violate company policy. Is that correct? I believe that's the case. There's the company policy does not exclude the possibility of self-defense. That is correct. Now, addressing the issue of the public policy claim brought by Mr. As set forth in the court's order and in Loprino's brief. The critical case here is the Martin Marietta versus Lorenz case that was decided 30 years ago by the Colorado Supreme Court. And to my knowledge, I do not believe that there has been another public policy exception that's been recognized in Colorado in the last 30 years. And that's probably because a subsequent Colorado case echoed what the Lorenz court said, that the public policy exception should be applied sparingly. Now, in this case, the self-defense argument and the argument that the self-defense is a an exception to the at will employment doesn't fit for several reasons. One is the court says that it has to be inextricably tied. There must be a nexus between the claimed right and employment. And it has to be tied to a statute or some other pronouncement. In this case, the plaintiff relies on a criminal statute relating to self-defense and some general statements in the Colorado Constitution. I think the district court was correct when she found that those were insufficiently specific to tie it to employment. Now, the other critical issue here is this. The Lorenz Supreme Court was ruling after, of course, the Court of Appeals had determined the issue. And the Court of Appeals had set forth, had recognized a public policy exception for in that case and set forth certain requirements. The Supreme Court said, we are going to add a specific requirement. And that is that the employee advise the employer that the employee believes that the employee has a right. And that is why the employee is acting in the way he or she is or isn't acting in the way he or she is or isn't going to do that. And the court says, I'm going to quote to this. This is the added requirement. Furthermore, the added requirement should result in providing the employer with fair notice prior to the discharge decision. Of circumstances supportive of the employee's reasonable belief that the action directed by the employer would abridge the employee's right or privilege as a worker. And that's that is the record. And it's very powerful what you just said. But the court's ruling, I thought, was more generic. I thought the court said there is no right of self-defense to a discharge of a net will employee. And it was that legal ruling that kind of cut everything else out. Is that not right? You're now saying, well, there isn't a good factual record for self-defense here. But I thought the court's ruling was broader than that and said, as a matter of law, Colorado wouldn't have that legal defense. Am I right or wrong on that? You are correct, Judge Evil, in that the court said that the requirement is that the proposed right or public policy exception needs to be tied to a specific statute or some other right, such as a constitutional right. But it needs to be specific and it needs to be tied to the employment context. And in this case, the self-defense was not so tied, and therefore there is no self-defense to a termination as a matter of law. So the court didn't get into the nuances. Did he push back? Didn't he? Did he assert the right of self-defense to the employer or didn't he? Did he waive it? Didn't he waive it? The court cut through all of that by simply saying there is no such right as a matter of law under Colorado law. I agree, Your Honor, that the district court did not get into the fact that I just mentioned about the plaintiff not bringing up self-defense. And it's undisputed in this case that Mr. Donez did not. His testimony is he claimed self-defense after he was terminated by Ms. Esterly in the meeting, but never before. And so the district court did not get into that nuanced factual situation. But I bring it up here to somewhat address your question, Judge Ebel, about should we send this to the certified to the Colorado Supreme Court? And I suggest to you that this is not the case for the court to make that determination, because by the very language of Lorenz, it doesn't fit. And so the public policy, I think the public policy exception or the purported public policy exception that the district court was correct in granting summary judgment. As the district court was in ruling on both the motions in limine and the renewed motion for summary judgment on the racist discrimination claim. Now, we heard the earlier argument today. Supposing that we say we could we could decide this by saying, well, we're going to assume that the Supreme Court of Colorado would allow a self-defense exception to the ability to terminate an employee at will, willy nilly. But we are confident if the court did that, they would require that the self-defense be tied somehow to the terms and conditions of employment and somehow that it would exclude ambiguous facts where the employer doesn't notify the employer up front about the assertion of self-defense. And we don't find those two things here. So this is not a good case for the Supreme Court of Colorado to clarify. Is that what you're proposing to say? I propose to say a little bit different in terms of the at the ending of that certainly is that this case does not meet the requirements of the rents in that the employer had to be notified pre decision to discharge. And it is undisputed that Mr. Don has never raised self-defense until after he was advised that his term is employment was being terminated. Is there any obligation by the employer to at least ask what happened? Well, in this case, Judge Phillips, absolutely. The employer did ask what happened. Now, that's a different question. Then were you then the leading question of, oh, were you acting in self-defense? That's not proper procedure. That's not proper HR procedure. And Mr. Don is was asked at the hospital. What happened? And then he was asked because of the circumstances, he was in the hospital. His wife works at Laprino Foods. Laprino Foods said, can you please give a statement to your wife and she can bring it in? And so he was given free reign to say anything he wanted in his written statement. And in his written statement, he neither mentioned self-defense, nor did he mention that he pushed Mr. LaVar back. Now, after Laprino Foods was advised that he pushed Mr. LaVar back and they confirmed that in a conversation with Mr. Don is. Laprino Foods determined that he had violated its workplace violence policy by getting into a fight. Understand this individual was a foreperson at the plant, and because there was no supervisor on the shift, he was acting both as the foreperson and the supervisor. He had the most authority on the shift, and yet he gets into a fight with one of the employees that he's overseeing. That's unacceptable. And frankly, that fact alone distinguishes all the other individuals. While there are many other distinguishing facts, that fact alone distinguishes Mr. Don is from all the other, quote, similarly situated or comparators that plaintiff attempted to bring up. So the only way to save your job is if you get pushed, walk away. Well, he did admit as set forth in our brief that he could have. And he should have the answer that if you push back, you're just gone no matter what. Because I suspect most people are going to push back. Well, most people should not. Mr. Don is was a supervisor. He admitted that he could have. The door was right behind him. He admitted that when Mr. Lamar pushed him, he could have left and gotten reported to HR, and he did not. And when he pushed back, what that did was escalate the situation. I'm not necessarily I realize I'm doing super slow mo and everything here, but I'm trying to picture it in my mind. And if someone pushes the other person, they are now into that person's space to where that when the person gets back to their normal stance, they're right upon each other. And so you push back to just reclaim your space, not not an aggressive move, but instead restore the status quo almost. And I don't know that that really qualifies as getting in a fight. Well. What there was what the testimony here was, is that. Mr. LeVar was upset he was not getting sufficient help at work, and he yelled at Mr. And Mr. Don is, according to Mr. LeVar, got into Mr. LeVar's face and started yelling that I'm saying something along the lines of, well, crying about it isn't going to help at all. And that's when Mr. LeVar said I moved him back. He used this motion. And so he did move. He started it from the standpoint of physical, at least having the initial physical contact with Mr. And at that point in time, Mr. Don has called it a push. He could have left. And there was sufficient space space here I believe there was no question he could have left and he admitted that. Now, I'm almost out of time unless there's any other questions. I'm happy to ask. Thank you. Council. Ms. Burma, you have rebuttal time. Um, just very briefly, I will say that the constitutional and statutory basis that appellant rely on are the same constitutional and statutory basis relied upon and the review Walmart and coach UV circuit city and other cases where they have found a public policy exception for self defense. I don't think the fact that it's a criminal statute has any particular bearing as to whether or not it can serve as a public policy basis for an exception to wrongful termination. I'd also like to point out Julia Lambert who worked in the Pinos human resources department for 20 years and was involved in investigations and disciplined testified that there is no right to self defense at Latino foods at any time. The Pinos 30 v six and another HR individual testified they did not know if it would have mattered if Mr Jonas acted in self defense. And in fact Mr Jonas testified that during his meeting with one of the HR representatives, he told her that he was acting in self defense and she said it didn't matter. And the Pino never asked about it because it didn't matter Mr Jonas didn't have a right to self defense. Now in this case also Mr LeVar admitted immediately after the assault that he knocked out Mr Jonas he didn't say he was in a fight, or that Mr Jonas punched him he said I knocked out Mr Jonas. So Jonas was found unconscious on the floor. He had serious bodily injuries including a fractured trachea, and was in the hospital overnight. Mrs Jonas stated she didn't feel comfortable getting a statement from him at that time because of his injuries but the Pino insisted. Now, obviously, the fact that we disagree so strongly about so many of these issues just shows how there is a question of material fact regarding the, the claims in this case and that it is not something that should have been determined at summary judgment. And unless there's any additional questions I will waive the remainder of my time. Right. Thank you, counsel. We appreciate your arguments the case will be submitted and counsel are excused.